## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOHN B. JACKSON,                )
                                )        No. **04C 3988**
        **Plaintiff,**          )
                                )
    v.                          )
                                )        **Jury Trial Demanded**
AETNA                           )        JUDGE JOAN H. LEFKOW
                                )
        **Defendant.**  MAGISTRATE JUDGE ASHMAN

### COMPLAINT AT LAW

Plaintiff John B. Jackson., by his attorney, Richard C. Leng, complaining against

defendant Aetna, alleges as follows:

### NATURE OF THE ACTION

1.    This matter arises out of defendant's refusal to pay plaintiff earned wages under

the 2002 Aetna National Accounts Region Head New Compensation Program.

### THE PARTIES
### A. PLAINTIFF

2.    Plaintiff, John B. Jackson, is citizen of the State of Colorado.    At all times

relevant to the matters at issue in the complaint he was an employee of defendant,

Aetna, holding the position of Region Head of the North Central Region, with his

offices in the Northern District of Illinois.    During his employment as North

Central Region Head of Aetna, plaintiff was a citizen of Illinois, living in Deer

Park, Illinois.

### B. DEFENDANT

3.    Defendant Aetna is a corporation engaged in the insurance business.    Defendant is

incorporated in the State of Delaware and its home offices are located in Hartford,

Connecticut. Defendant does business within the Northern District of the State of Illinois.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 and principles of pendant jurisdiction inasmuch as this action arises between citizens of different states and the amount in controversy is in excess of $75,000 exclusive of interests or costs.

5. Venue is appropriate in the Northern District of Illinois because the cause of action arose in the Northern District of Illinois.

## ALLEGATIONS COMMON TO ALL COUNTS

6. At all relevant times, plaintiff was an employee of defendant Aetna.

7. Plaintiff was one of six Region Heads of Aetna. Plaintiff was in charge of the North Central Region, which included Illinois.

8. In 2002 Aetna implemented a "New Compensation Program" for the six National Account Region Heads for the period January 1, 2002 to December 31 2002. A copy of the compensation program is attached as Ex. A to the complaint.

9. Under the New Compensation Program, the compensation mix of the six Region Heads was structured to include salary and a bonus consisting of Performance Stock Units, Stock Options and a Cash Bonus.

10. The New Compensation Program was designed to reinforce "pay for performance" and to "provide an incremental financial incentive ... for ... employees to work toward the success of Aetna."

11. The New Compensation Program was structured so as to constitute approximately one-half of the Region Heads' total annual compensation. The Region Heads compensation package was to consist of: 1) Base Pay; 2) Cash Bonus; 3) Stock Options ; and, 4) Performance Stock Units.

12. The New Compensation Program established eleven criteria for determining the amount of the Region Heads' bonuses. Approximately 75% of the bonus calculation was composed of factors that were common to all Region Heads. That is to say, the common success of the six Region Heads in achieving the financial goals of Aetna determined at least 75% of the bonus earned by each Region Head.

13. On December 1, 2002, as a result of reorganization and staff reduction, Aetna eliminated plaintiff's position.

14. On information and belief, defendant paid the remaining Region Heads the compensation they had earned under the 2002 New Compensation Program, including bonuses and stock options.

15. Aetna promised plaintiff that he would be paid the bonus he had earned under the 2002 New Compensation Program on several occasions between October 2002 and February 2003.

16. On March 4, 2002 Aetna advised plaintiff that although he was eligible for the 2002 bonus, he would not be paid the Cash Bonus.

17. Aetna did pay plaintiff a portion of the bonus, consisting of the Stock Options and Performance Stock Units.

18. Aetna, despite repeated demands, has refused to pay plaintiff the Cash Bonus he earned under the 2002 New Compensation Program.

19. The unpaid amount owed plaintiff under the 2002 New Compensation Program is approximately $211,232, as calculated pursuant to the criteria set forth by defendant under the 2002 New Compensation Program.

## COUNT I
### (Violation of Illinois Wage Payment and Collection Act 820 ILCS §115 et seq.)

20. Plaintiff realleges and incorporates by reference the allegation of paragraphs 1-18 as is fully set forth herein.

21. Under the Illinois Wage Payment and Collection Act, Aetna was required to pay plaintiff final compensation due him as a separated employee not later than the next regularly scheduled payday following his separation. (820 ILCS §115/5)

22. Under the Illinois Wage Payment and Collection Act final compensation includes earned bonuses. (820 ILCS §115/2).

23. Aetna has violated the Illinois Wage Collection and Payment Act by failing and refusing to pay plaintiff the bonus he earned under the Aetna 2002 New Compensation Program.

## COUNT II – BREACH OF CONTRACT

24. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-18 of the complaint as if fully set forth herein.

25. The Aetna 2002 New Compensation Plan constituted a contract between Aetna and plaintiff.

26. Plaintiff fully performed his obligations under the contract and acted in detrimental reliance upon Aetna's representations that it would pay him under the 2002 New Compensation Program.

**WHEREFORE**, plaintiff respectfully requests that the court enter a judgment in favour of plaintiff and against defendants in an amount not less than $211,232 plus interest, filing fees, costs and reasonable attorneys fees and for such further relief as the court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Plaintiff, John B. Jackson

By: _____

One of their attorneys

Richard C. Leng
Attorney at Law
230 West Monroe, Suite 250
Chicago, IL 60606
(312) 857-1180

# New Compensation Program
# and Balanced Scorecards

**ӾAetna™**

National Accounts Region Heads
National Accounts Offsite Meeting
April 12, 2002

Page 1

04/11/2002

# Agenda

- New Compensation Program

  - Key Points – Compensation Philosophy and Pay Opportunity

  - Annual Bonus and Equity Linkage

  - Equity-based Wealth Creation

- Balanced Scorecards

  - Measuring and Rewarding Performance

  - Health Operations and National Accounts Scorecards

  - Region Head Results Metrics

  - Sample Individual Scorecard

04/11/2002

# Compensation Philosophy & Mix Shift

- As an organization, we have decided to change our compensation philosophy to reposition ourselves as a high performing player in the health care arena. This change is consistent with our other initiatives to reposition Aetna and competitively manager our cost.

- The change will shift our compensation mix. Specifically, we will:
  - Shift from multiple individual plans by increasing the MIP participation
  - Shift from cash (annual bonus) to equity (stock)
  - Rebalance our incentives to move from short term (annual cash) to long term (stock)

04/11/2002

# Wealth Creation Opportunity

- We feel that the wealth opportunity through equity will provide a superior performance driver than our current compensation mix.

- Improve the link between managers and health plan operations objectives

- Reinforces pay for performance link consistent with our executive compensation philosophy

- Facilitates management long-term share ownership through increase use of performance stock units and stock options

- Increase the linkage between management and shareholders

- Provide an incremental financial incentive (wealth opportunity) for health Operations employees to work toward the success of Aetna.

04/11/2002

## Impact on your Total Compensation Opportunity

▶ The change in compensation mix will personally impact your annual bonus opportunity. You will go from a dollar target to a percent of pay target. This will reduce your annual bonus opportunity.

▶ However, it will not diminish your total compensation opportunity. You will be kept whole by the grant of both an incremental stock option and performance unit grant.

04/11/2002

# Annual Bonus and Equity Linkage

*Aetna financial performance drives annual bonus funding and the value of equity awards*

| Component | Performance Focus |
|---|---|
| Annual Bonus | ▪ Success on "Back to Basics" objectives<br>▪ Funding driven primarily by profitability |
| Stock Options | ▪ Shareholder value creation (reward aligned with shareholders and stock market)<br>▪ Highly leveraged, 10 year opportunity |
| Performance Stock Units | ▪ 100% of units will vest in January 2003 if Aetna 2002 financial performance meets plan<br>▪ 200% of units will vest in January 2003 if Aetna 2002 financial performance meets or exceeds 125% of plan<br>▪ Shareholder value creation (reward aligned with management-controlled success) |

04/11/2002

# Region Head Compensation Profile



Bonus
26%

Stock Options
18%

Performance Stock
6%

Base Pay
45%

Page 7

04/11/2002

# Illustrative Example
## Projected Wealth Creation Opportunity

REALIZED GAINS ON EXERCISED OPTIONS: ▓▓▓$25.00▓▓▓

| GRANT DATE | OPTIONS GRANTED | OPTION PRICE | OPTIONS O/S | PROJECTED WEALTH CREATION (i.e. In-The-Money Value) | | |
|---|---|---|---|---|---|---|
| | | | | $35 | $50 | $80 |
| 02/29/2000 | 3,323 | $19.80 | 3,323 | $50,523 | $100,368 | $200,058 |
| 10/29/1999 | 3,323 | $24.19 | 3,323 | $35,925 | $85,770 | $185,460 |
| 02/27/1998 | 3,116 | $42.06 | 3,116 | $0 | $24,744 | $118,224 |
| 02/28/1997 | 1,038 | $40.01 | 1,038 | $0 | $10,367 | $41,507 |
| 03/29/1996 | 2,077 | $36.34 | 1,000 | $0 | $13,657 | $43,857 |
| 02/24/1995 | 1,661 | $25.75 | 661 | $6,112 | $16,027 | $35,857 |
| 03/25/1994 | 623 | $26.60 | - | $0 | $0 | $0 |
| TOTALS | 15,161 | | 12,461 | ▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓ |

# Illustrative Example:
## Performance Unit Valuation: Vesting and Potential Pay-Out



| 2001 | 2002 | 2003 | 2004 | 2005 |
|------|------|------|------|------|

**Grant:**
Units Granted:  1,000
Grant Price:  $26.15
Value at Grant:  $26,150

**Potential Accelerated Vesting**
100% @ $40.00:  $40,000
200% @ $45.00:  $90,000

**Stock Units Vest**
(if no prior vesting)
50% @ $40.00:  $2?

**CAVEATS:**

In the short run, internal Company perf. is not always reflected in stock price of individual Co.

External stock market is imperfectly correlated with internal Company performance

Sometimes all boats rise with the tide

Flip side - exogenous events impact market values (e.g., Sept 11, Greenspan [F.R.B], etc.)

# Illustrative Example:
## Potential Value of Performance Unit Awards at Various Stock Prices and Vesting Scenarios



**ASSUMPTIONS:**

| | Grant | Vesting | Share Retention |
|---|---|---|---|
| Units Granted | 1,000 | 500 | 250 |
| Grant Price | $26.15 | 1,000 | 500 |
| Value at Grant | $26,150 | 2,000 | 1,000 |

[Does not reflect impact of taxation or payout method]

FOR ILLUSTRATIVE PURPOSES ONLY. VALUES NOT NECESSARILY INDICATIVE OF ACTUAL PAYOUT.

Page 10

04/11/2002

# Illustrative Example
## Projected Wealth Creation Opportunity

Units Paid-Out: January 2006
- 1000 Units
- 100% Vesting

### PROJECTED WEALTH CREATION (2006 - Beyond)

| | $30 | $40 | $50 | $65 | $80 |
|---|---|---|---|---|---|
| 2001 - 2005 Grant | $30,000 | $40,000 | $50,000 | $65,000 | $80,000 |
| 2002 - 2006 Grant | $30,000 | $40,000 | $50,000 | $65,000 | $80,000 |
| Total @100% Vesting | $60,000 | $80,000 | $100,000 | $130,000 | $160,000 |
| Total @200% Vesting | $120,000 | $160,000 | $200,000 | $260,000 | $320,000 |

- Units can be accelerated: 2003, 2004 and 2005
- Units can be pay-out between 100% and 200%

04/11/2002

# Linking Measures



*"What are the key objectives our business plans focus on for the purposes of identifying annual bonus measures for executives?*

Page 12

04/11/2002



# Measuring and Rewarding Performance

Organization Performance Assessment

Individual Performance Assessment

04/11/2002

# Management and PIP Annual Bonus Funding Process Plan: 2002

1. **Total pool funding determination**

2. **Funding allocated to business unit pools based on business unit measures**

3. **Funding allocated to individual based on performance (measures under development at discretion of business unit head)**

## Business Unit Pools:

- **Business Segments (7 Pools)**
  - Health Ops (Nat'l, Key, Select, Small, Dental) (1 to 5)
  - Group Insurance (6)
  - Large Case Pensions (LCP) (7)
- Other (Non P&L) Business Units (18 pools)
  - Health Ops (ACS, Rx, OEG, Beh. Health, Network Contracting and Strategy) (1 to 5)
  - Regional Shared Services Pools
    - 6 regional pools (6 to11)
  - National Medical Services (12)
  - L&RA (13)
  - Finance (14)
  - AIS (15)
  - Communications (16)
  - Strategy (17)
  - Human Resources (18)

## Team Component:

- Health Ops Scorecard

**Aetna Scorecard**

- Health Ops Scorecard

**Each position will have specific accountability with individual performance expectations**

Page 14

04/11/2002

# 2002 Aetna Scorecard 11 Measures (was 21 measures in 2001)

| Metrics | Weight[1] | 10 | 20 | Targets 30 | 40 | FY |
|---|---|---|---|---|---|---|
| **CUSTOMER SATISFACTION** | | | | | | |
| - Member Satisfaction - measured by First Call Resolution (surveys of Aetna members) | 5% | | | | | |
| - Provider Satisfaction - measured by First Claim Resolution (% rework) | 4% | | | | | |
| - Plan Sponsor Satisfaction - measured by surveys of Aetna plan sponsors | 4% | | | | | |
| - Broker/Consultant Satisfaction - measured by surveys of brokers and feedback from national consultants | 4% | | | | | |
| - Employee Engagement - measured by an employee survey | 4% | | | | | |
| **OPERATIONAL EXCELLENCE** | | | | | | |
| - Consolidation of Membership Systems (AES) - measured by timely achievement of quarterly milestones | 4% | | | | | |
| - Total Quality Measure - measured by percent improvement against baseline of end-to-end claim process audit | 4% | | | | | |
| - Group Insurance - Process Improvements and Disability Claim - measured by achieve identified targets | 4% | | | | | |
| **FINANCIAL** | | | | | | |
| - Business earnings (millions) - excludes interest and goodwill | 27% | | | | | |
| - Cash Flow from Operations (millions) | 20% | | | | | |
| - Return on Capital | 20% | | | | | |
| | 100% | | | | | |

# Health Operations 2002 Scorecard (Draft)

**Aetna**

## Health Operations
## 2002 Scorecard

| Weight | Measure | Targets | | | | |
|---|---|---|---|---|---|---|
| | | Q1 | Q2 | Q3 | Q4 | FY |
| **65%** | **Financials** | | | | | |
| 50% | 1 AFT Net income - All Health (% of plan) | 21.0% | 30.0% | 62.0% | 38.0% | 100.0% |
| 15% | 2 All Medical Risk MCR - Commercial Products | 86.9% | 87.6% | 88.1% | 85.4% | 86.5% |
| **35%** | **Constituent / Operational Excellence** | | | | | |
| | **Constituent** | | | | | |
| 5% | 3 Member Satisfaction - measured by survey or First Call Resolution | (1) | 85.0% | 90.0% | 95.0% | 90.0% |
| 5% | 4 Plan Sponsor Satisfaction - measured by survey | % improvement from baseline (Baseline set by 7/15/02) | | | | |
| 5% | 5 Provider Satisfaction - measured by First Claim Resolution | 90.0% | 90.5% | 91.0% | 92.0% | 91.0% |
| 5% | 6 Broker and Consultant Satisfaction - measured by survey | % improvement from baseline (Baseline set by 7/15/02) | | | | |
| 5% | 7 Employee Engagement - measured by EE survey | % improvement from baseline (Baseline set by TBD) | | | | |
| | **Operational Excellence** | | | | | |
| 5% | 8 Total Quality - measured by end to end claim audit | 90.0% | 90.5% | 91.0% | 92.0% | 91.0% |
| 5% | 9 Consolidation of Membership Systems (AES) | Completion of quarterly milestones | | | | |

(1) Survey vehicle and baseline will be established in Q1 for use beginning in Q2 2002.

04/11/2002

# National Accounts 2002 Scorecard (Draft)

## National Accounts

### 2002 Scorecard

Ａetna™

| Weight | Measures | Q1 | Q2 | Q3 | Q4 | FY |
|--------|----------|----|----|----|----|----|
| | | | | Targets | | |
| 50% | **Health Operations (Team Component)** | | | | | |
| 40% | **Business Unit Measures** | | | | | |
| | *Financial* | | | | | |
| 25% | AFIT Net Income (National Accounts, AGB and Feds, $ in millions) | $39.4 | $19.7 | $33.6 | $32.3 | $125.0 |
| 5% | MCR (Commercial Medical Risk) | 88.7% | 89.0% | 88.4% | 88.7% | 88.2% |
| 5% | ASC Fees | 387.7 | 387.7 | 390.6 | 390.2 | 1558.2 |
| 5% | 2003 Effective Sales Known in 2002 (measured in membership) | TBD | TBD | TBD | TBD | TBD |
| 10% | *Constituent / Operational Excellence* | | | | | |
| | *Constituent* | | | | | |
| 3% | Consultant Satisfaction | % Improvement from baseline | | | | |
| | *Operational Excellence* | | | | | |
| 4% | Completion of segment migration - measured by % of expenses directly attributed to segment | TBD | TBD | TBD | TBD | TBD |
| 3% | Plan Sponsor Services Operational Metric (Days Sales in Accts Rec.) | TBD | TBD | TBD | TBD | TBD |

04/11/2002

# Region Head Results Metrics and Weights (Draft)

| Metric | Weight |
|---|---|
| • Team Component | 50% |
| • National Accounts AFIT Net Income | 15% |
| • Regional National Accounts AFIT Net Income | 10% |
| • Regional 2003 Effective Sales Known in 2002 | 5% |
| • Regional Medical Membership | 5% |
| • Regional Ancillary Products Membership | 5% |
| • Sales Compensation Design | 2% |
| • Member Satisfaction | 2% |
| • Plan Sponsor Satisfaction | 2% |
| • New Product Innovation and Growth | 4% |
| **Total** | **100%** |

04/11/2002

# Sample Individual Scorecard

## INDIVIDUAL SCORECARD

### FOR ILLUSTRATION PURPOSES ONLY

| Employee Name | Aetna No. | Job Number | Department/Position | Performance Review Period |
|---|---|---|---|---|
| John G. Public | A00000 | 555514 | National Accounts Region Head | From: Jan 2002  To: Dec 2002 |

| Expected Results (5 or 6 recommended) | Expected Behaviors (8 to 10 recommended) |
|---|---|

**Expected Results**

- Contribute to the overall success of National Accounts and Health Operations
- Achieve constituent satisfaction objectives
- Implement new or revised products according to plan
- Participate in the development of the 2004 sales compensation plan
- Achieve the following financial goals for the region:
  - After Federal Income Tax (AFIT) Net Income
  - 2003 Effective Sales Known in 2002
  - Medical and Ancillary Product Membership

**Expected Behaviors**

Developing Strategies that Drive the Business:
- Creates business strategy to drive competitive advantage.
- Identifies and leads shifts in strategic direction as market conditions dictate.
- Conveys a clear sense of Aetna's purpose that captures the energy and aligns the efforts of the workforce.

Generating Sustained Value through Profitable Growth:
- Strategically invests resources in ways that optimize and build future competitiveness.
- Identifies and manages key revenue and expense drivers and trends to assess cost/operation and create feasible plans.

Building and Inspiring Internal Capability:
- Invests in the development of people as key component of increased competitiveness.

Driving Transformation:
- Initiates change efforts to achieve sustainable business results.
- Monitors industry trends and business results to identify the need for change.

Uses Information to Create Knowledge:
- Reduces a complex situation into a series of equations by turning qualitative information into quantitative data that can be used to drive organizational or industry-wide decisions.
- Builds forecasting tools and other sources of information to validate strategy.

04/11/2002

# Company-wide Implementation Timeline

| | **Completion Date** |
|---|---|
| **Scorecard** | |
| • Business Unit | by April 19 |
| • Direct Reports to Business Unit Heads | by April 30 |
| • Remaining Employees | by May 15 |



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet **04C 398 8**

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**JUDGE JOAN H. LEFKOW**

**MAGISTRATE JUDGE ASHMAN**

| | |
|---|---|
| **Plaintiff(s):** John B. Jackson | **Defendant(s):** Aetna |
| County of Residence: Arapaho County, Colorado | County of Residence: |
| Plaintiff's Atty: Richard C. Leng<br>330 W. Main St<br>Barrington, IL 60010<br>847-381-6041 | Defendant's Atty: |

JUN 1 9 2004

U.S. DISTRICT COURT CLERK 04 JUN 14 AM 10:53 FILED FOR DOCKETING ED-7

**II. Basis of Jurisdiction:** 4 1. U.S. Gov't Plaintiff

**III. Citizenship of Principal Parties (Diversity Cases Only)**

Plaintiff:- 2 Citizen of Another State

Defendant:- 2 Citizen of Another State

**IV. Origin :**        1. Original Proceeding

**V. Nature of Suit:**        190 Other Contract

**VI. Cause of Action:**        28 U.S.C. §1332 Breach of Employment Contract

**VII. Requested in Complaint**

Class Action: No

Dollar Demand: $211,232

Jury Demand: Yes

**VIII.** This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____

Date: 6/14/04

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**        Revised: 06/28/00

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

In the Matter of

John B. Jackson,
     Plaintiff,

v.

Aetna,
     Defendant.



Case Number: **04C 398 8**

**JUDGE JOAN H. LEFKOW**

JUN 16 2004

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

John B. Jackson

MAGISTRATE JUDGE ASHMAN

| (A) | | (B) | |
|---|---|---|---|
| **SIGNATURE** *Richard C. Leng* | | **SIGNATURE** | |
| **NAME** Richard C. Leng | | **NAME** | |
| **FIRM** Law Offices of Richard C. Leng | | **FIRM** | |
| **STREET ADDRESS** 330 W. Main St. | | **STREET ADDRESS** | |
| **CITY/STATE/ZIP** Barrington, IL 60010 | | **CITY/STATE/ZIP** | |
| **TELEPHONE NUMBER** 847-381-6041 | **FAX NUMBER** 847-381-6042 | **TELEPHONE NUMBER** | **FAX NUMBER** |
| **E-MAIL ADDRESS** rcleng@msn.com | | **E-MAIL ADDRESS** | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 70786 | | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | |
| **MEMBER OF TRIAL BAR?** YES ☑ NO ☐ | | **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ | |
| **TRIAL ATTORNEY?** YES ☑ NO ☐ | | **TRIAL ATTORNEY?** YES ☐ NO ☐ | |
| | | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | |
| (C) | | (D) | |
| **SIGNATURE** | | **SIGNATURE** | |
| **NAME** | | **NAME** | |
| **FIRM** | | **FIRM** | |
| **STREET ADDRESS** | | **STREET ADDRESS** | |
| **CITY/STATE/ZIP** | | **CITY/STATE/ZIP** | |
| **TELEPHONE NUMBER** | **FAX NUMBER** | **TELEPHONE NUMBER** | **FAX NUMBER** |
| **E-MAIL ADDRESS** | | **E-MAIL ADDRESS** | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | |
| **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ | | **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ | |
| **TRIAL ATTORNEY?** YES ☐ NO ☐ | | **TRIAL ATTORNEY?** YES ☐ NO ☐ | |
| **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | |

FILED FOR DOCKETING
2004 JUN 14 AM 10: 33
CLERK U.S. DISTRICT COURT